# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ELIZABETH A. YARGER,**

    **Plaintiff,**

v.                                  Case No.: 8:05-cv-1799-T-26MSS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying claims for period of disability and disability insurance benefits under the Act.[1]

The Court has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (the "ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff protectively filed an application for period of disability and social security disability insurance ("SSDI") benefits on June 14, 2001. (T. 46-49, 55-64) Plaintiff alleged an onset of disability date of October 22, 2001, due to fibromyalgia and chronic muscle pain. (T. 56) Her application was denied initially and upon reconsideration. (T. 33-44)

---

[1] This matter has been referred to the Undersigned by the District Court for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

Plaintiff requested a hearing, which was held on August 3, 2004, before ALJ Elving L. Torres. (T. 26-32) In a decision dated October 28, 2004, the ALJ denied Plaintiff's claims for benefits. (T. 26-32) Plaintiff was insured for disability benefits through the date of the ALJ decision. (T. 27) Plaintiff appealed her denial of benefits to the Appeals Council, but it denied review of the decision on July 25, 2005. (T. 4-6) Plaintiff timely sought review of this decision by the United States District Court on November 19, 2004. (Dkt 1). The parties agree that the case is ripe for review.

### B. Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. (T. 17-20) By way of summary, Plaintiff alleged she became disabled due to chronic muscle pain and fibromyalgia. (T. 56z)

At the hearing, the ALJ considered Plaintiff's testimony (T. 19, 378-97) and reviewed her medical records, including medical records from Dr. Rosanna Farner, a neurologist (T. 122-27), Dr. John De Cosmo, Plaintiff's treating physician since 1999, and Dr. Susan Fraser, a rheumatologist who evaluated Plaintiff at Dr. Cosmo's request. (T. 566-67) Additionally, the ALJ considered the report of a State Agency reviewing physician, Gr. Grippe, who reviewed some of the medical evidence developed by Plaintiff's treating physicians.

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 22, 2001. (T. 31) The ALJ found that the medical evidence indicated that Plaintiff suffered from "fibromyalgia, including a right shoulder problem." (T. 29) The ALJ acknowledged that this impairment is severe but concluded it was not severe enough to meet or medically equal any of the listed impairments found in Appendix 1, Subpart P, Regulations No. 4. (T. 29) The ALJ

determined further that Plaintiff's testimony regarding her pain and other symptoms was not fully credible or consistent with the medical evidence. (T. 20) In doing so, the ALJ also expressly rejected the supporting opinion of Plaintiff's long-time treating physician as to Plaintiff's residual functional capacity ("RFC"). (T. 30) The ALJ further found that Plaintiff retained the RFC to perform a limited range of sedentary to light work activity that did not require her to stand and/or walk in excess of 4 hours during an 8 hour day; climb any ladders, ropes or scaffolds; climb; balance; stoop; kneel; crouch; crawl; reach overhead with the right extremity; pull with her right extremity more than occasionally; work at unprotected heights or to be exposed to extremely wet environments or dangerous machinery. (T. 31) The ALJ ultimately concluded that Plaintiff was not disabled under the Act because, despite these limitations, she had the RFC to perform a limited range of light work, including her past relevant work activity as a receiver/dispatcher, administrative clerk, or telephone supervisor. (T. 31)

## II.    STANDARD OF REVIEW

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) (2000). "Substantial evidence is 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) (citing Richardson v. Perales, 402 U.S. 389 (1971)). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew, make credibility determinations, or substitute its judgment as to the weight of the evidence for that of the Commissioner. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

No similar presumption of validity attaches to the Commissioner's legal conclusions;

rather the Court reviews the application of law *de novo*. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner or the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, the case must be reversed. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991); accord Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1986) ("Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."); Stephen v. Comm'r of Soc. Sec., 386 F. Supp. 2d 1257, 1261 (M.D. Fla. 2005) ("The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.").

Against this legal backdrop, Plaintiff asserts two points of error: 1) the ALJ erred in rejecting the opinions of Plaintiff's treating physician and 2) the ALJ erred in discrediting Plaintiff's subjective complaints.

For the reasons that follow, the Undersigned **REPORTS and RECOMMENDS** that the decision of the Commissioner be **REVERSED** and Plaintiff be awarded benefits pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### III.  DISCUSSION

**WHETHER THE ALJ PROPERLY DISCOUNTED THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIAN**

As noted, Plaintiff first contends that the ALJ erred as a matter of law when he rejected the opinion of Plaintiff's treating physician, Dr. John De Cosmo. The Commissioner responds that the ALJ properly satisfied the good cause standard in discounting the opinion of Dr. Cosmo.

[T]he law on the priority of medical evidence of this circuit is clear: "[t]he opinion of a treating physician . . . 'must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Phillips v. Barnard, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Furthermore, that good cause finding must be set forth expressly on the face of the ALJ's opinion and the failure to do so is reversible error.  Lewis, 125 F.3d at 1440.  "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the [Commissioner]." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th. Cir. 1986)).

"Good cause" exists where (1) the treating physicians' opinions are not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the treating physicians' opinions are conclusory or inconsistent with their own medical records.  Phillips, 357 F.3d at 1240-41.  Where no medical evidence conclusively counters the treating physicians' opinions and no other good cause is presented, the Commissioner cannot discount the treating physicians' opinions.  Schnorr v. Bowen, 816 F.2d 578, 581-82 (11th Cir. 1987); see also Geiger v. Apfel, No. 6:99-cv-12-ORL-18B, 2000 WL 381920, at *6 (M.D. Fla. Feb. 9, 2000) (finding that since the treating and consulting physicians agree that the plaintiff is physically incapable of working and there is no contrary medical evidence, the "ALJ has not established good cause to disregard the opinions of the treating physician").

This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability.  Lewis, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1527(d)(2)).  It is equally well-settled that the reports of reviewing, non-examining physicians do not constitute substantial evidence on

which to base an administrative decision.  Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb, 847 F.2d at 703 ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.").  Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987).

In this instance, the ALJ erred in the application of each of theses tenets.  Dr. Cosmo treated the Plaintiff continually from 1999 up through at least the date of the hearing and subsequent submission of the requested RFC analysis. (T. 598 ) He diagnosed Plaintiff with fibromyalgia and prescribed several forms of medication at various levels over the years to address the diagnosed illness.  He referred Plaintiff to Dr. Susan Fraser, a Rheumatologist, who confirmed the diagnosis through a "comprehensive examination" and opined that all of the recognized tender points for fibromyalgia were positive with the exception of those over the sub-occipital area.  Additionally, she found plaintiff had five positive control points for fibromyalgia with three over the lower extremities and two in the forearms.  (T. 566-67)  Numerous records from Millenium Medical, Dr. Cosmo's facility, noted under the heading "Objective" Dr. Cosmo's apparent *objective* findings regarding Plaintiff's impairments, including reduced range of motion, para-vertebral muscle spasm, tender points, hyper tonicity and muscle weakness. (T. 499-503)

Dr. Cosmo also prepared and Plaintiff submitted a residual functional capacity assessment.  In it the treating physician noted several limitations and impairments from which Plaintiff suffered.  He concluded Plaintiff was limited to less than sedentary work.

Specifically, Dr. Cosmo found that Plaintiff could lift a maximum of three pounds, could walk or stand for only two hours of an eight hour day, could never climb, stoop, crouch, kneel or crawl and only occasionally balance, could sit without interruption for only 10-18 minutes, and was subject to a myriad of environmental restrictions. (T. 491-92)

Acknowledging that this RFC would render Plaintiff unable to "perform even the full range of sedentary work activity," the ALJ discredited Dr. Cosmo's findings, suggesting that they were related to Plaintiff's subjective complaints rather than on objective findings. (T. 30) He also stated that the findings were not consistent Dr Cosmo's findings on examination over the course of treatment, characterizing those findings as "minimal." (T. 30) In fact, the findings in evidence were not minimal as noted above and the ALJ's conclusion in that regard is not supported by substantial medical evidence. Further, it is not surprising that the findings of the doctor were based largely on his observations of the Plaintiff rather than some specific diagnostic tests beyond those typically done in the treatment of fibromyalgia.

In this regard, the Court notes, as other courts have, that fibromyalgia is unique and because of the unavailability of objective clinical tests it is difficult to determine the severity of the condition and its impact on one's ability to work. Bruet v. Barnhardt, 313 F. Supp.2d 1338 (M.D. Fla. 2004). Thus, the Eleventh Circuit has observed, "fibromyalgia, which often lacks medical or laboratory signs . . . is generally diagnosed on an individual's described symptoms . . . ." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005 ). Following this reasoning, a treating physician's determination that a patient suffers impairments and limitations due to fibromyalgia is even more valuable because there are no objective signs of severity, and the physician must interpret the limited available data for the reader. Indeed that is the reason the physician is asked to provide an RFC assessment. Stewart

v. Apfel, No. 99-6132, 2000 U.S.App. LEXIS 33214, at *8-9 (11th Cir. Dec. 20, 2000) (citation omitted).

Here, plaintiff's diagnosis of fibromyalgia is undisputed. The ALJ himself found that the medical evidence establishes that the plaintiff "suffers from fibromyalgia, including a right shoulder problem," and that this impairment is severe. (T. 29) Thus, by definition, Plaintiff's fibromyalgia limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A rheumatologist confirmed this diagnosis. (T. 566-67) See Burroughs v. Massanari, 156 F. Supp.2d 1350, 1367 (N.D. Ga. 2001) (acknowledging that a specialist in rheumatology is better qualified to diagnose fibromyalgia and determine its effects on an individual). Both the rhematologist and Dr. Cosmo noted specific functional limitations caused by the condition.

Significantly, the only contrary opinion as to Plaintiff's resulting RFC is that of a State Agency reviewing physician, Dr. Grippe, who, according to Plaintiff, is a psychiatrist. The opinions of specialists are to be afforded more weight by the ALJ than the opinions of non-specialists, if the specialist is offering an opinion about issues related to his or her area of specialty. See 20 C.F.R. §§ 404.1527(d)(5) and 416. 927(d)(5). More significantly, Dr. Grippe did not examine Plaintiff and did not have the benefit of the treating physician's RFC assessment prior to conducting his review of the record.[2] Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). Finally, such an opinion standing alone and against contrary opinions of treating doctors cannot constitute

---

[2] The treating physician's records are dated July, 2003; Dr. Grippe's assesment is dated December 30, 2002.

substantial evidence on which to base a disability determination. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir.1988) ("The opinions of non-examining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.").

In this case, the ALJ either relied solely on Dr. Grippe's assessment of Plaintiff's capabilities in reaching his conclusions or substituted his own judgment for that of the treating source. (T.30) In either case, the decision runs afoul of the basic tenets of the priority of medical evidence in a disability evaluation. See Venette v. Apfel, 14 F. Supp. 2d. 1307, 1313 (S.D. Fla. 1998) (citing Marbury v. Sullivan, 957 F.2d 837 (11th Cir. 1992), for the proposition that the ALJ may not arbitrarily substitute his or her own hunch or opinion for the diagnosis of a medical professional). Good cause for rejecting the opinions of Dr. Cosmo was not established; and therefore, they must be accepted as true as a matter of law. See MacGregor v. Bowen, 786 F.2d 1050 (11th Cir. 1986) (holding that where the ALJ has ignored or failed properly to refute a treating physician's findings, they are to be accepted as true).

The vocational expert consulted in this case has already opined that if the limitations found by Dr. Cosmo were accepted as true, Plaintiff would not be able to perform any gainful work activity available in the national economy. (T. 613)

For the foregoing reasons, the ALJ's decision denying Plaintiff's claims for period of disability and disability insurance benefits is not consistent with the requirements of law and is not supported by substantial evidence.

## IV.    CONCLUSION

Accordingly,  the Undersigned **REPORTS AND RECOMMENDS** that the decision

of the Commissioner be **REVERSED and REMANDED** for a calculation and award of benefits pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3). Further consideration under the sequential analysis is unnecessary here because all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that Plaintiff was disabled under the Act. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993); accord, Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir.1988); Bowen v. Heckler, 748 F.2d 629, 631, 636-37 (11th Cir.1984). The **CLERK** is directed to **CLOSE** this case.

  **RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 17th day of August 2006.

_____
MARY S. SCRIVEN
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies furnished to:

Presiding District Court Judge
Counsel of Record
Unrepresented Parties